for a large consultancy fee of $50.00 per slide with Rep. Keenan and Rep. Norfolk Southern. Good morning. May it please the Court, my name is Paul Keenan. I represent the appellants of Hyundai BNSF and Norfolk Southern. I would like to reserve two minutes for rebuttal. We have before us an extraordinary ruling in which an ocean carrier has been held liable under the Carmack Amendment, in which the freight that was being transported was exempted from the Carmack Amendment by the Surface Transportation Board. And two railroads have been held liable under the Carmack Amendment, despite having a contract with their customer which waives the Carmack Amendment terms. As a result, they have been held liable under the Carmack Amendment, despite the provisions in their own contract, by a party with whom they have no privity whatsoever. Before we go any further... How much is at stake, Mr. Keenan, how much is at stake if the Court erred in treating this as a Carmack matter? If the Court erred in treating this as a Carmack Amendment, actually this is a great segue to my next point. I would like to frame the issue. There was a major sea change in this case at the summary judgment stage. The plaintiffs went all in on Carmack and waived their common law claims. And I thought it was interesting that this case appeared on the listing as breach of an international maritime contract. It's not. It's just a Carmack Amendment case. When the plaintiffs went all in on Carmack, only the Carmack claim was tried. No other claim was tried. And so as a result, the only pivotal issue before this Court is, does the plaintiff have a legal standing to assert a Carmack claim against these particular defendants? And the judge made this clear a number of different times. So it's all or nothing. If they're wrong about Carmack, that's it. It's correct. They went all in on Carmack. Now, I thought it was extraordinary, but the case was a little unclear to me. But at that point, that's what we had. And the judge reminded the parties of this fact several times as the case progressed, that this is just a Carmack case. And in fact, when the Court denied the defendant's Rule 50 motion following trial, the Court again said this was a Carmack case and this is what we presented to the jury and this is what the jury found. So what we have before us here is just the legal issue of do they have standing to assert such claim? Now, there are a number of problems, as I said. One of them is the carrier that is receiving the freight at origin is, and there is complete agreement on this, Hyundai. Hyundai Marine is not a party that is a rail carrier, subject to the jurisdiction of the Surface Transportation Board. Hyundai Marine is not a motor carrier freight forwarder because the definition of freight forwarder excludes motor carriers. So Hyundai Marine is just that. It's a maritime company that's going to arrange to ship this freight eventually to Taiwan. It's going from Harrodsburg, Kentucky. Carmack doesn't concern itself with the arranging through railroads or for intermodal transportation. Correct. The key is that first carrier. Look at that first carrier. Is that first carrier required to issue a Carmack compliant bill of lading at origin? The Supreme Court in Regal Blight made this very clear. You look at that carrier and you say, do they, are they a subject to the STB jurisdiction, and must they issue a Carmack compliant bill of lading? So is the first carrier the trucking company, or do you view the first carrier as Hyundai? The law views the first carrier as Hyundai, and actually the parties agree on that. It's in both briefings. Both sets of briefings agree. Hyundai is the receiving carrier at origin. Why? Because they arrange the entire deal, and everything that gets touched after that is a subcontractor of Hyundai. More importantly, it's not disputed. Excuse me? More importantly, it's not disputed by the other side. Correct. In fact, it appears in the first sentence of a paragraph in their brief, and I agree with it wholeheartedly. Hyundai is the receiving carrier at the point of origin. Now, that's why the plaintiff has had some trouble struggling. Now, there is no allegation that Hyundai, in the complaint, there is no allegation that Hyundai is a Carmack carrier. There was no evidence put on a trial that Hyundai is a Carmack carrier. Of course, there can't be, because it's not. At the briefing in the district court, the plaintiff struggled with this and said, well, they own some railroad tracks. It was in a footnote. But of course, that doesn't make you a railroad. Most of the railroad's customers own railroad tracks. Then when we got to the appellate stage, the plaintiff was reaching again and said, they are a freight forwarder. But the problem with that is the definition of freight forwarder in Title 49 specifically excludes water carriers, and there are case decisions on that point. The truth is, Hyundai is not a carrier subject to the STB. And from that point, Carmack cannot apply. Now, separate and apart from that is the fact that the freight itself has been exempted from the Interstate Commerce Act by the STB, including the Carmack Amendment. As a result, the Carmack Amendment doesn't apply to this freight anyway. The only requirement is that the contract must give the shipper the opportunity to assert a Carmack claim, excuse me, to include Carmack provisions. In other words, the contract has to offer the shipper, you want it in Carmack terms or do you want it in non-Carmack terms? Well, the railroad's contract is with Hyundai. And they did. They said to Hyundai, do you want Carmack terms? Do you not want Carmack terms that's in the contract? Of course, these were the... Did the shipper have that option? Well, the shipper allows Hyundai in Section 4B of the Transportation Contract to use subcontract on any terms that it wants. As a result, Hyundai has no obligation. They look for the cheapest. So what's the cheapest? Well, no Carmack terms, because that's much cheaper if you don't have the Carmack terms. So they waive them off. So these railroads are moving it, they have a contract with Hyundai, no Carmack terms, and they apply. And now Corning is coming in out of left field and saying, wait, what about the Carmack Amendment? Nobody told me about that. Well, first of all, you have no privity with the railroads. Railroads never heard of you. Second, with respect to Hyundai, you allow Hyundai to subcontract on any terms you want. But the real bottom line is you don't really get to anything Carmack with respect to this case because Hyundai, the receiving carrier, is not a Carmack carrier. The problem in the Supreme Court, there are policy reasons for this. Is Hyundai a carrier or a shipper for purposes of the express waiver of Carmack? Shipper. They're a shipper for the railroad. So you're saying they're a shipper when you need them to be a shipper, and they're a carrier when you need them to be a carrier. No. It has to do with the relationship. It's the perspective of the relationship. If they are a shipper to the railroad, they're the railroad's customer. Hyundai. They're the railroad's customers. And its deal with its customer is with Corning. And that's to move this freight from Harrisburg, Kentucky, to Taiwan. Not a Carmack move. So there's a distinction between those two relationships. I know I saw it, but where do you point us to the admission by your opponent that Hyundai is the... Oh. I didn't think that's what you were going to say. Is the receiving carrier? Right. Okay, you don't know. No, I don't. It's in the first sentence of the paragraph. I can see it, but I... I saw it, too. Never mind. We'll find it. The policy reasons that go behind this have to do with the fact that in international commerce, you don't want multiple sets of laws and regulations hitting this freight, depending upon where it is. The Supreme Court has made it clear, you want one set, and it goes all the way across. So you look at the transportation contract, you look at COGSA. You don't look at, here's the little part that will apply Carmack, and here's this part will apply some... It's one set of laws that applies to it all the way across. Well, the Supreme Court made it pretty clear that they weren't talking about exports. They were talking about imports.  They sort of went out of their way. They didn't say it didn't apply to exports. They said it was unnecessary to get to that. And here's the regulation, and here's the policy behind the regulation. So they didn't say it didn't apply to exports. They just said it was unnecessary. Which makes sense, because the Supreme Court doesn't render advisory opinions. But they said, here's the law, and here's the policy behind the law. And when you lay that on top of these facts, it's very clear that Carmack does not apply to this movement going out. And there are a number of decisions that have since ruled that way. There were export movements, specifically in the Southern District of New York. Now, there was one decision in the Southern District of New York that went the other way. It was a decision by Judge Jones, who was previously with the Southern District of New York. Two things I can tell you. The other courts did not follow Judge Jones' ruling. And the other thing is, we subsequently entered our appearance for BNSF in that case, and BNSF has now been dismissed from the case. There are... Does the court have any other questions? Because this is a very complicated area of the law. And I understand that the court does not usually see Carmack in those cases. We've been having a lot of fun with it. What, if anything, is the impact or the importance of the fact that the service agreement between Hyundai and Corning incorporates the Hyundai Bill of Lading, and that Bill of Lading says that if Hyundai is found to be liable for damage, then, and I think the exact language is damage that is caused by any subcontractor, that that liability shall be to the extent to which such subcontractor would have been liable to Corning if it had made a direct and separate contract with Corning in respect of such handling, storage, or carriage. And the reason I ask that is, if there had been such separate contracts, surely you would have had a Carmack problem. Possibly. But in this case, we don't have any contract case at all. It's purely Carmack or non-Carmack and we don't have that contractual relationship. There are a number of scenarios where this could have gone. This isn't as if there had been separate contracts. That's what the Bill of Lading says. If Hyundai is found to be responsible for, liable for, any damage that was actually caused by subcontractors, then we look to those subcontractors as if they had had separate contracts with Corning. Why is that? I don't have any idea why it's there, but what does it mean? As best I can make sense out of it is that Corning could then use the Hyundai contract with, let's say, Norfolk Southern and go directly after Norfolk Southern under that contract as if that contract was with Corning. Now, parenthetically, it's talking about as if the subcontractor had had direct and separate contracts. And that's what's confusing me because if the subcontractor, any of them, because we don't have any idea where the damage actually occurred, but if any of those subcontractors had had just separate, direct contracts with Corning, why wouldn't those, at least as far as the railroads are concerned, why wouldn't those have been subject to CARMAC? They may very well have been. In other words, if Corning had decided I'm going to make my own arrangements to move this to the west coast. I'm going to have my own separate contracts with the trucker, the railroads. You're absolutely right. Those arrangements may very well have been then subject to CARMAC because it's a separate bill of lading. Now, the carriers are, each of them now, they're not subcontractors on an international move. Now they're having separate direct contracts and now it is a domestic move until it gets to the port. I think the question here is are we drawing a distinction without a difference? So in other words, even if it's not a direct CARMAC action, does Hyundai owe that same amount of money to Corning under the bill of lading? If this was a contract case, because it's not. It's a CARMAC case. And there's no contracts considered in the CARMAC context. We're really out on hypothetical land. Under that hypothetical, it's possible. But no, in this case, it's just a CARMAC case. And I can, again, parenthetically add, I am as surprised as anyone that they waived the contract case. Because frankly, I thought it really was a contract case. I knew it wasn't a CARMAC case. And when it suddenly changed direction and became just a CARMAC case, there is no CARMAC standing for this type of case. It's a through move to a foreign jurisdiction. CARMAC doesn't apply to those. So as a result, our job today is actually much easier. What this court can do is decide whether they want to say there's no CARMAC claim because it's an international move and the receiving carrier is not subject to the SDB jurisdiction. Or the court can take a different route and say, the freight has been exempted from CARMAC by the U.S. Surface Transportation Board. And the railroads didn't have any reason to contact Corning. They didn't even know of Corning to offer them CARMAC. All they had to do was go to Hyundai, and they did. And they did offer CARMAC. Did the railroads affirmatively opt out of CARMAC? Well, it's not up to the railroads. It's up to Hyundai. Hyundai did. Hyundai for the, well, for the transportation that occurs via, which doesn't matter. They just wouldn't qualify because they're the receiver, receiving carrier. This is not an easy area. I mean, I've been living in this area of the law for 30 years, so I make assumptions. And please forgive me. But it's not easy to understand. But Regal Beloit makes it pretty clear, and we're fortunate that the facts of this case lend themselves to just, do they have CARMAC standing? Because they clearly don't. There are a number of interesting questions that could arise otherwise. But we just have a CARMAC case. Let me go back to you, and this is displaying my ignorance of an area of this case. So I'll freely acknowledge that before we start. But talk to me a little bit about your claim that this cargo has been completely exempted by the Surface Transportation Board. Explain that. Section 10501 of Title 49 authorizes the Surface Transportation Board to take certain types of freight service and exempt them from either parts of the Act or the entire Act. In this particular instance, the United States Surface Transportation Board conducted a number of hearings and made a determination that they would exempt containerized freight traffic, such as this traffic, from any of the requirements of the Act. That kicks in Section 10502, which says, okay, the Act doesn't apply other than safety things. When you have a contract now between the railroad and the shipper, you must offer in your contract the ability to take CARMAC liability terms. But you can opt out of that. So in the contract, the contracts, that NSC and NSF have. So you're back to the point that Hyundai, having been given carte blanche from Corning, Hyundai opted out of any kind of CARMAC coverage. Correct. It was in their contract. They were given the right to do that, as required by 10502, but they took the cheaper route, because they had the ability to do that, so they opted out of CARMAC and went non-CARMAC under 10502. So as a result. Now that's a different way that this court can reach the same conclusion, that there's no CARMAC stand, because it was exempted out, and the only party the railroads had a contract with was Hyundai, and Hyundai had the authorization to do that deal. On the other hand, we could also do the Regal Beloit approach. Good morning, Your Honor. May it please the court. My name is Edward Radzic, and with me is Rebecca Jennings. We represent CNA as the subrogee of Corning Inc. I think, Chief Judge Batchelder, you hit the nail on the head. I think the regular form bill of lading that Hyundai presented here puts Hyundai's liability as if the merchant, or Corning, had negotiated a contract, a separate and direct contract with the subcontractor. So it creates that fiction. The service contract reinforces the fact that at all times, Hyundai is an independent contractor, which means that, and the service contract allows Hyundai to contract an individual, not as Corning's principal. So Hyundai can agree to whatever it deems fit in respect of hiring subcontractors, but the service contract does not bind Corning to those contracts. I think your words right there make it difficult for you, because you say the bill of lading creates a fiction. So, in other words, it's a fiction that's enforceable via contract, not directly against the railroads. But these are Hyundai's words. In Section 5B2. Right, but Hyundai cannot create CARMAC standing. Hyundai can create an obligation upon itself to act as if CARMAC applied to it. But that's different than creating CARMAC standing for an actual CARMAC claim directly against the railroads. Well, I think if we examine Clause 5B2. Okay. The bottom line, it tells you that Hyundai's liability to the merchant, which is Corning, is as if the merchant had entered into a separate and direct contract. Right, but that's Hyundai's liability not the railroad's liability, right? Correct. Okay, so if we take the as if I mean, the bill of lading directs us to this standard. This is Hyundai's standard of liability for damage which occurs in the hands of the subcontractor. And it says, as if the merchant had entered into a separate direct contract with that subcontractor. Mr. Radzig, I aren't you, isn't your case over if you aren't, if you cannot establish the right to CARMAC liability since that's the extent of your claim? The right to CARMAC is derived by contract. This, the CARMAC liability Well, it's a statute. You have to fall within the terms of the statute. But if, if, you have to be a receiving carrier. Yes, no, if Corning had entered into a contract with, directly with the subcontractor CARMAC would apply as a matter of law. But they didn't. But they did not. Did they? No, but I think you have to look back to measure what Hyundai's liability here is. You look at their There might be liability here, but I thought that we established at least it was the position of, I think of Mr. Radzig that you, or of Mr. Keenan that you must, your only claim is CARMAC. Correct. And CARMAC's liability stems from that clause 5b2. So, it's derived from the contract. Why did you waive your contract claim though if you're saying it's First of all, that's not true. CARMAC, what it applies preempts all other causes of action. My understanding in transportation law. It preempts the general contract and common law claims. There's no question about that. So we didn't waive it. Right, but see, here's the problem. CARMAC is a statutory claim that does preempt other causes of action if it directly applies. Your argument is not that CARMAC applies here. Your argument is that there's a fiction created by contract that our damages would be as if CARMAC applied. And those damages would be against Hyundai, not against the railroads. Well, they could be against both. First of all, there's no statutory prohibition from us proceeding directly against the railroads. That's where If CARMAC applies rather than just fictionally applies CARMAC does apply. There's no question that Norfolk Southern was the first rail carrier in this whole scheme to accept the cargo for interstate transportation of the goods. And statutorily CARMAC applies. Those are all the arguments that were made in Regal Floyd and while it did limit itself to the import as opposed to export Justice Sotomayor went on and on about what the statute says and how it should be interpreted and that whole position as sound as it may seem right now was rejected by a majority of the Supreme Court. I understand. However, those cases the Regal Floyd line of cases and the bills relating in those cases extended CARMAC inland beyond the port of loading or discharge. Here, if we look at the responsibility scheme in section 5 of Hyundai's regular form bill of lading, it tells you that at C CARMAC or the Hay Rules apply as a matter of course, as a matter of law. A goes into extending COGSA only to the area of the port. And B goes when the damage occurs in the hands of the subcontractor, you look to what the contract would have been had the merchant had Corning entered into that contract. That's why you get a default of the CARMAC amendment because if Corning had entered into a separate contract as laid out in Hyundai's bill of lading, naturally Corning would have insisted upon CARMAC liability or if the railroad wished to exempt itself from CARMAC liability, it would have gone to Corning directly and said you have a choice between CARMAC liability or to exempt yourself from CARMAC. Secondly, I think it's... Could I ask you to confirm that your briefing treats Hyundai as the receiving carrier? Hyundai would be the receiving carrier. Alright, and then it goes on to say that the railroad is... The first railroad is a freight or Hyundai is a freight forwarder. They're also a freight forwarder. They arrange for this transportation. This is a case that Mr. Keenan's firm was involved with which involves a party that arranged for... But doesn't freight forwarder the definition of freight forwarder exclude an ocean carrier? Doesn't exclude ocean carriers, it excludes water carriers. But water carriers otherwise governed by CARMAC. So Corning, Hyundai... Say that again? Hyundai is... You said other water carriers or otherwise governed by CARMAC? There are water carriers that provide interstate transportation of goods which would be covered by CARMAC which would be excluded as freight forwarders under the statutory scheme of CARMAC. Do freight forwarders include actual carriers? Because Hyundai is. Hyundai is an actual carrier vis-a-vis Corning. Right, so I thought the definition of freight forwarders excluded actual carriers. I thought freight forwarders just did all of the arrangements. There is some confusion and I apologize again. The paradigm of either clarity or precision. What the heck? The Supreme Court hasn't been the paradigm of clarity or precision. I agree. But all I'm trying to figure out is can... No, that's not all I'm trying to figure out. I just want to know whether an actual carrier which Hyundai clearly, as I understand this case, is but which also is in charge of all of the arrangements is in fact meets the definition of a freight forwarder and I wouldn't have thought that it did. I don't have any problem assigning the role of freight forwarder to Hyundai in this case under CARMAC. But you don't even have to get there. I think what we're struggling here with is are we talking about the statutory incorporation or the statutory applicability of CARMAC or is CARMAC applying here by virtue of contract? I think the starting point has to be by contract. So the contract as set forth in Hyundai's regular form bill of lading allows Hyundai's liability to be as if it had entered into that separate contract with the subcontractor. Okay, so now explain why Mr. Keenan is incorrect that you waived any such contract claim. Well, first of all we did not. We never waived it. Well, didn't pursue it. Didn't plead it. Didn't... No, I think there's no waiver here. We're recognizing correctly that CARMAC when it applies preempts the common law and contract claims. But Judge Simpson in the motions for summary judgment held that the contract the service contract was the governing contract here. The service contract was controlling the relationship from the party. Hyundai's CARMAC liability springs from that contract. Springs from the service contract which incorporates the bill of lading. And to the extent that there's any terms that are inconsistent in the bill of lading, the service contract would prevail. For instance, Mr. Keenan points to the clause that says that Hyundai was authorized to enter into these contracts on Corning's behalf as its agent and to enter into any terms with the railroad that it saw fit. Well, that provision is clearly overridden by the independent contractor language in the service contract which says that at all times... Because the service contract said as I recall, that to the extent that there was inconsistency between the bill of lading, it was the service contract that prevailed. That's correct. So that, coupled with the language in the service contract that says that we're allowing Hyundai to enter into any agency contracts it may see fit to guarantee inland transportation because the service contract does provide that Hyundai is on the hook door to door from the time it leaves the Harrodsburg, Kentucky factory until the time it gets to Taiwan. Corning, in the contract, allows Hyundai to enter into contracts but as a principal, not as Corning's agent. I think the distinction of the independent contractor is important there. So, in your view, if that is what those portions of the contract provide for, in your view, did Hyundai have an obligation to give Corning the opportunity to opt in or out with regard to Carmack? Absolutely. And I think after the Regal-Beloit decision, which again, those decisions had bills of lading that extended contract, COGSA, all the way inland, beyond the port. And here we have only COGSA extending clearly just within the perimeters of the port. But bills of lading that have been cut since the Regal-Beloit decision explicitly, and I think we referred to one issued by Maersk Line in which they recite the magic language of giving their shipper the opportunity to opt in or opt out of Carmack during an intermodal movement. Here, there was no such opportunity given to Corning to opt in or opt out of Carmack. With regard to, may I ask, with regard to your claim, your theory, that Hyundai acted as independent contractor. Yes. The bill of lading and the service contract authorized Hyundai to negotiate contracts and however it wished, with the railroads to complete the intermodal transportation. I think you have to read the service contract as prevailing over the bill of lading. And the bill of lading is inconsistent in that regard. Because the bill of lading says that Okay, so we have to read those as okay, you say they compete, right? They compete. I think the independent contractor trumps the agency language in the bill of lading. But I mean, it also, there's clear authorization to negotiate these contracts on terms it sees fit. You think that's trumped? That's trumped. Because I think to the extent that the service contract allows Hyundai to enter into subcontracts, it does so where Hyundai is the principal in those contracts. And they've pretty much admitted that. They're the principal. They did not discuss with Corning any exemptions from Carmack liability. So if they're the principal, they're authorized to decline Carmack coverage. But that would be, in your view, as to damage that might be suffered by Corning. I think Hyundai's liability has to be measured by 5B2. If I could, I've run out of time, but I haven't addressed the issue. Hey, there isn't enough time. You could be here all day. We probably still wouldn't get it all straight. But I did not address the issue of interest and I would just defer the court to my arguments. No, I think we can get that from the briefs. Rebuttal? Just to be clear on one point, there was a bench conference prior to the start of the trial. During that bench conference, Judge Simpson made it very clear when Mr. Ratzak started to mention contracts Judge said, I'm simply reminding you that you disclaimed any other claims in this case except the Carmack amendment. And later the court repeats you have disclaimed any other claims in this case except the Carmack amendment. So that's what we will be going to trial on. So if that's the case, then why was Hyundai still a party to the proceedings? Great question. Hyundai was the receiving carrier. I guess you couldn't go very far with a Carmack claim without a receiving carrier. But they're not a Carmack receiving carrier. So the case should have ended right there. As to Hyundai? Well, the other parties are connecting carriers. They're not the receiving carrier. They can't have independent Carmack liability. The Supreme Court's been very clear on that. But this is still a Carmack claim. I'm not sure I can understand or can accept the idea that it's not a Carmack claim just because it is a backdoor Carmack claim as a result of the contract. There has never been an ocean carrier held liable under the Carmack amendment until this case. And there are very good reasons for that. And the Supreme Court has spelled it out in Regal Beloit. You have a receiving carrier under an international move. The domestic Carmack amendment does not apply. Not to that carrier. Not to any of the small railroad connecting carriers. Not to somebody that may have trucked it. It does not apply. And in fact, the way this case should have gone down is that Corning should have pursued his contract claim against Hyundai. And then Hyundai may have had various indemnification rights against the railroads. But it didn't. It went down under the Carmack amendment. And that is a major left turn in this case. As I began, I said that's a sea change in this case. Because when that happens, you see, Carmack applies by statute. Congress is what makes Carmack apply, not a contract. A contract can incorporate terms or borrow terms, etc. But you cannot apply Carmack by contract. You can apply its terms. Well, this is not a breach of contract case. So we look at what did Congress say when they established the Carmack amendment, and does it apply to this case? And it does not. This case is being closely watched, not only by ocean carriers who do not want to be held suddenly liable under the Carmack amendment, but also by the railroads. Because the railroads need to rely upon the terms of the contracts that they are moving freight. And this case says, it doesn't matter what contract you have with Hyundai or your customer, somebody you don't know, with whom you have no is going to assert a claim against you under Carmack. You have to rely. The contract waives Carmack. If the railroads can't rely upon their contracts with their customers, this is very disruptive to international commerce, as well as the railroads' transportation. It's a fairly serious issue. Thank you, counsel. The case will be submitted. There being nothing further to come before the court this morning, you may adjourn the court.